257 F.2d 297
 In the Matter of Charles J. STEEN, Individually and d/b/a Steen Tire Distributors, et al., Bankrupt.
James TALCOTT, Inc., Appellant,
v.
Gerald P. GRACE, as Trustee in Bankruptcy, Appellee.
 No. 12204.
 United States Court of Appeals Seventh Circuit.
 July 8, 1958.
 Rehearing Denied August 19, 1958.
 
 James R. Frankel, John P. McGoorty, Jr., Chicago, Ill., for appellant.
 Francis L. Zimmermann, Kirby H. Wells, Chicago, Ill., for appellee.
 Before FINNEGAN, SCHNACKENBERG and PARKINSON, Circuit Judges.
 FINNEGAN, Circuit Judge.
 
 
 1
 This is a reclamation proceeding, in bankruptcy, commenced by James Talcott, Inc., transferee of an installment note and conditional sale contract, signed by the bankrupt Charles J. Steen, covering 28 auto tire products in molds sold by The Grimes Company, a Texas manufacturer to Steen. Talcott sought possession of these molds from James P. Grace, the Trustee in Bankruptcy who, by his answer, admitted execution of the contract but denied that title had been reserved to Grimes, the vendor or Talcott, as assignee. After a hearing the Referee in Bankruptcy made findings of fact and conclusions of law and dismissed Talcott's petition for reclamation, with prejudice. The Referee found for the Trustee on the ground that under Texas statutory[1] provisions 16 Vernon's Annot.Civil Stats., c. 6, art. 5489-5490) "the reservation of title to chattels as security in a conditional sales contract is void as against the vendee's creditors unless the said instrument so executed is forthwith recorded in the county where the property is then situated." "That by reason of the non-recordation of said conditional sale contract in Dallas County, Texas, the reservation of title provided for in said contract is void." The district judge overruled Talcott's petition for review of the Referee's findings, affirmed his order, entered June 27, 1957, and this appeal followed. The district court ruled correctly and for that reason the salient facts can be adapted from the Referee's findings. In re Garden City Brewery, 7 Cir., 1954, 208 F.2d 377.
 
 
 2
 Charles Steen did business as Steen Tire Distributors, Factory Outlet Tire Co. and Tire Jobbers Company in Chicago, Illinois, and was adjudicated a bankrupt on January 31, 1957. Grimes Company, located in Dallas, Texas, manufactures auto tire production molds. Steen paid $1602 to Grimes August 27, 1956, against a total time purchase price of $6683.64 for 28 molds produced by the seller at its Dallas factory. Shortly after September 5, 1956 Steen in Chicago received, by mail, from Grimes in Dallas four copies of a conditional sale contract (See Appendix "A" to this opinion) and an installment promissory note for $5081.61, representing the balance on the purchase price. All of these documents were unsigned, dated September 5, 1956 and sent Steen for his signature. He signed all these papers, mailed them back to Grimes in Dallas, and, the latter in turn, posted a copy of the contract, signed "accepted" by Grimes, to Steen in Chicago. Grimes sold the Steen note and conditional sale contract for value, on October 2, 1956, to James Talcott, Inc., petitioner here, which is a New York corporation engaged in commercial financing, and having a Chicago office.
 
 
 3
 The contract and note (See Appendix "A") were printed forms prepared by Talcott and described as the property sold the 28 molds, each identified in the contract dated September 5, 1956, by model and serial number. It is expressly provided, under the terms of the contract, that the molds were "to be located and kept for use at" Steen's Chicago place of business; title and ownership of the molds to remain in Grimes, its successors or assigns, until payment of the purchase price and if Steen defaulted, or in the event of his bankruptcy, then Grimes could accelerate the maturity date of the purchase price balance and repossess the molds.
 
 
 4
 The subject matter of this contract, i. e., the 28 molds were in actual existence on or about September 5, 1956 and were situated in Dallas. There they remained until Grimes delivered them to a motor truck carrier, in four separate groups over a period of several weeks, for transportation to Steen at Chicago. On October 12, 1956, the first shipment arrived in Chicago and the last shipment reached Steen sometime between October 29, 1956 and November 2, 1956. The contract contained no provision for the delivery of these molds.
 
 
 5
 By its terms, the note was payable to the order of "The Grimes Company, Dallas, Texas, at 11th floor, 225 Fourth Avenue, New York 3, N. Y., or at such other place as the holder * * * may from time to time appoint * * *." There is no evidence that any place other than New York was appointed.
 
 
 6
 The conditional sale contract was recorded in the office of the Recorder of Deeds, Cook County, Illinois on October 15, 1956, roughly two weeks after Talcott became the assignee of this contract. No recordation of the contract was made in Dallas County, Texas. Steen defaulted on the installment due December 10, 1956 and was given an extension to January 10, 1957. Because of this default, coupled with Talcott's petition, the entire balance of the purchase price, $4209.70 as of January 31, 1957 became due and payable to Talcott.
 
 
 7
 The Trustee never had actual custody, possession or control of the molds. After Steen's bankruptcy Grimes delivered a letter, dated February 1, 1957, to Steen demanding that he surrender possession of the molds to a Grimes' nominee, C. & S. Tire Company, Chicago, and Steen complied. The Referee, at this point, also found "That Grimes repossessed said molds for the benefit of Talcott to the extent that Talcott was then the owner and holder of the conditional sales contract and note and that Grimes' interest was as guarantor, even though there was no direct evidence that Talcott at that time knew about or authorized said repossession by Grimes."
 
 
 8
 The main question is which law is to prevail — Illinois or Texas recording laws. When he was ruling on the Referee's findings, the district judge observed: "Although this Court may have taken a view opposite to that of the Illinois courts on the issue, it is bound by Illinois decisions and therefore must affirm the findings and order of the Referee." Neither the district judge nor referee cited any Illinois authorities and on appeal Talcott places heavy reliance on George v. Haas, 1924, 311 Ill. 382, 143 N.E. 54, while the Trustee rests his case, primarily, on Harrison v. State Bank of Hull, 1956, 11 Ill.App.2d 471, 138 N.E.2d 41.
 
 
 9
 Of course it is undisputed that these tire molds were in Dallas, Texas at the time when Steen signed the contract and note and when Grimes wrote "accepted" on that printed agreement. The conditional sale contract is a device for protecting creditors whose lien flows with the chattel. But as Professor Beale long ago pointed out: "Whether a sale of a chattel conditioned on the retention of title by the vendor is legally effective to keep title in the vendor depends upon the law of the place where the chattel was at the time of the sale." 2 Beale, Conflicts of Laws, § 272.2 (1935). George v. Haas is a conflicts of law decision on issues involving usurious rate of interest on a promissory note and is inapposite here on the problem before us where the situs of the chattels involved were in Texas when the parties were signing the papers. On the other hand, Harrison v. State Bank of Hull, supra, was a suit for conversion of farm equipment sold under "the usual combination note and conditional sales contract," and is readily distinguishable from George v. Haas. The Illinois Appellate Court was clearly not, despite Talcott's tenuous arguments, overruling the Illinois Supreme Court in the earlier case, and the following view of the Appellate Court supports the decision in the current appeal [11 Ill.App.2d 471, 138 N.E.2d 44]:
 
 
 10
 "Reference is made in the briefs of counsel to certain statements appearing in the Restatement, Conflict of Laws. There, it is stated, that the rules, where there is a conflict of law, respecting conditional sales are analogous to the rules dealing with chattel mortgages. Section 273-278. Thus the general rule is stated to be that the validity and effect of a mortgage of a chattel are determined by the law of the state where the chattel is at the time when the mortgage is executed, Restatement, Conflict of Laws, Section 265, and by analogy, whether a conditional sale is effective to enable the vendor to retain title is determined by the law of the state where the chattel is at the time of the sale, Restatement, Conflict of Laws, Section 272. One exception is noted in the sections above, namely a situation where the conditional sales contract, by its terms, provides for delivery of the chattel by the vendor to the vendee before the transaction is complete, in which event the law of the state where the contract is completed, i. e., where delivery is made, applies."
 
 
 11
 "The contracts between plaintiff and Thomason were conditional sales contracts in Missouri and their validity is to be tested by the law of that state. To be valid against subsequent purchasers in good faith and creditors, the contracts were required to be recorded by the laws of Missouri. Failure to record these contracts in accordance with these statutory provisions is fatal to the seller's remedy against a citizen of our state who is within the specified class."
 
 
 12
 The order appealed must be affirmed.
 
 
 13
 Judgment affirmed.
 
 
 14
 Appendix "A".
 
 
 15
 To the Opinion in Case No. 12204 in the Matter of Charles J. Steen, Etc.
 
 
 16
 "This form NOT to be used in Colorado, Connecticut, Florida, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York (consumer up to $1500), Ohio, Pennsylvania, Texas and Virginia. As to filing and recording, follow laws of the particular state. In view of local technical requirements, James Talcott, Inc., cannot be responsible for the correctness or legal adequacy of this form, the method of execution, filing and acknowledgement requirements, etc. If filing or recording is necessary, do so before delivery of merchandise."
 
 
 17
 James Talcott, Inc.
 1082

 Contract of Conditional Sale.
 September 5, 1956.

To (Name of Seller) The Grimes Company,
 (Address of Seller) 6835 Forest
 Park Road, Dallas, Texas.
 Description of Goods Purchased.
 
 
 18
 (State fully giving name of the manufacturer, model and serial number.)
 
 
 19
 10 Model 670-220V Production Molds
 Ser. #5834, 5835, 5836, 5837, 5838,
 5839, 5840, 5841, 5842, 5843

 8 Model 710-220V Production Molds
 Ser. #5844, 5845, 5846, 5847, 5848,
 5849, 5850, 5851

 6 Model 760-220V Production Molds
 Ser. #5852, 5853, 5854, 5855, 5856,
 5857

 4 Model 800-220V Production Molds
 Ser. #5858, 5859, 5860, 5861
 
 
 20
 Please enter the order of the undersigned Buyer for the above described goods on the terms and conditions following:
 
 
 21
 The goods described above are to be located and kept for use at:
 
 
 22
 (Street and Number) 3215 W. Ogden Ave.
 
 
 23
 (City) Chicago, (State) Illinois.
 
 
 24
 Total Time Price .......... $6,683.64
 Down Payment .............. 1,602.00
 Balance Due ............... 5,081.64
 
 
 25
 Buyer hereby agrees to pay you or your assigns said balance due in twelve successive monthly installments, commencing on the 10th day of October, 1956, and continuing on the same date of each month thereafter until paid; the first 12 installments shall each be in the amount of $423.47 and the final installment shall be in the amount of $......, with interest from date on the unpaid amount of said balance due being payable at the maturity of each installment, until maturity at the rate of 0% per annum and after maturity at the highest legal contract rate. Said balance due is evidenced by Buyer's promissory note or notes of even date herewith payable to the order of the Seller or assigns at Eleventh Floor, 225 Fourth Avenue, New York 3, New York, or at such other place as the holder thereof may from time to time appoint, which note or notes are given not as payment but to evidence said balance due.
 
 
 26
 It is agreed that the title and ownership of said property is to remain in you, your successors or assigns until all of said purchase price as represented by the note or notes described above and all other sums owing hereunder or any judgment therefor are fully paid in cash and all the conditions herein contained shall have been fulfilled and that only thereupon the title and ownership are to pass to Buyer. The property covered hereby shall remain personal property regardless of the degree or manner of its attachment to realty. In case the Buyer fails to perform any part of this contract, Buyer also agrees to pay all costs and expenses, including collection charges and attorneys' fees, incurred by Seller or assigns, in enforcing and protecting Seller's rights hereunder with respect to said property. Buyer agrees: at his own expense to keep said property in good order and repair at the above address; to be responsible for all loss or damage by fire, theft, casualty or other cause whatsoever; not to create or suffer any liens or adverse claims of any kind against it, or permit or suffer it to come into the possession of any other person; not to sell or remove it or suffer its removal from the place of its location shown above without written consent from the holder hereof; not to remove or permit to be removed any equipment or accessories now upon or hereafter placed upon the said property; it being understood and agreed that the Buyer has no authority, express or implied, to do any of the aforesaid things which he has agreed not to do. Buyer further agrees to keep said property insured, at Buyer's own expense, in the name of Seller or assigns, against loss or damage by fire or theft, with insurance companies acceptable to Seller or assigns, for an amount not less than the amount owing hereunder, said policies to be delivered to Seller or assigns; and if Buyer fails to so insure, Seller or assigns shall have the right to do so at the Buyer's expense. Buyer acknowledges that no warranties, representations or agreements not expressed herein have been made by Seller. Buyer further acknowledges notice of the intended assignment of this contract, and upon such assignment, Buyer agrees not to assert against the assignee hereof any defense, setoff, recoupment, claim or counterclaim which Buyer may have against the Seller, whether arising hereunder, or otherwise. Injury to or loss or destruction of said property, from whatever cause, shall not release the Buyer from payment as provided herein. Buyer shall have no right to assign this contract without the consent in writing of Seller or assigns.
 
 
 27
 Time is of the essence of this contract. If Buyer fails to pay any installment or interest when due, or defaults in the prompt and faithful performance of any of the foregoing conditions and agreements, or becomes insolvent, or if bankruptcy, receivership or other insolvency proceeding is instituted by or against Buyer, or if Seller or assigns shall at any time deem said property in danger of misuse, concealment, or misappropriation, or if Seller or assigns shall deem themselves insecure, then Seller or assigns may, without notice or demand, declare the entire balance of the purchase price and any other sums owing hereunder immediately due and payable, and Buyer will immediately deliver possession of said property to Seller or Seller's assigns, and Seller or assigns may, without notice or demand or legal process, enter any premises where the property may then be and take possession thereof; and in any such case Seller or assigns may also without notice to Buyer (1) cancel this contract and said note or notes, and as agreed damages for the Buyer's breach retain all payments theretofore received; or (2) recover from the Buyer as agreed damages for breaching this contract the unpaid balance of said note or notes (together with interest and any other sums owing thereon) after allowing credit on said note or notes for the then value of the property, if possession thereof has been retaken, or for the net proceeds derived from the resale thereof, after deducting costs, expenses and attorneys' fees incurred by Seller or assigns in retaking, recovering, repairing and reselling the property, the overplus, if any to be rendered to Buyer, it being agreed that the Seller or assigns may, on retaking possession of the property, sell same at public or private sale without notice or publication, or (3) pursue any remedy provided by law in like cases.
 
 
 28
 Buyer waives all rights and benefits under any provisions of law requiring the filing or delivery of a Certificate of Satisfaction or Discharge of this contract and releases any and all rights now or hereafter acquired against Seller or Seller's assigns for failure to file or deliver such Certificate upon payment or satisfaction hereof, except for failure to file or deliver such Certificate within a reasonable time after written demand delivered by Buyer by registered mail.
 
 
 29
 Any provision of this contract prohibited by law or inconsistent with a conditional contract of sale shall be ineffective to the extent of such provision without invalidating the remaining provisions hereof. This contract may be assigned by the Seller, and if so assigned, the assignee shall have all the rights of Seller hereunder, but in the absence of express written assumption of liability, the assignee shall not be liable to the Buyer or his legal representatives or assigns for breach by the Seller of any warranty contained herein, whether express or implied.
 
 
 30
 No Other Agreement, Oral or Written, Express or Implied, Has Been Made by Either Party.
 
 
 31
 Delivery to the Buyer of a copy of this contract at the time of its execution is hereby acknowledged by the Buyer.
 
 
 32
 Factory Outlet Tire Distributors, (Seal)
 (Buyer Sign Here)
 By Charles Steen.
 (If corporation, an authorized officer
 should sign, stating his title
 and attach corporate seal. If partnership,
 first sign firm name and
 have one or more partners sign.)
 Buyer's Address (Street — Number)
 3215 W. Ogden, (City) Chicago,
 (County) Cook, (State) Illinois.
 Louise M. King, (Seal)
 (Witness)
 Geraldine Ruf, (Seal)
 (Witness)

 Accepted (Seller Sign Here) The Grimes Company
 By Ruth Cullum.
 (If corporation, an authorized officer
 should sign, stating his title and attach
 corporate seal. If partnership,
 first sign firm name and have one or
 more partners sign.)

 Detach Note Before Filing or Recording Contract.
 Original
 Note.
 1082
 (Date) Sept. 5, 1956.
 (Total of Note) $5,081.64, (City) Chicago, (State)
 Illinois.
 
 
 33
 After Date I/We, or Either of Us, Promise to Pay to the Order of (Name of Seller) The Grimes Company, Dallas, Texas, at 11th floor, 225 Fourth Avenue, New York 3, N. Y., or at such other place as the holder hereof may from time to time appoint, the sum of Five Thousand and Eighty-one and 64/100 Dollars ($5,081.64) payable in 12 successive monthly installments, commencing on the 10th day of October, 1956, and continuing on the same date of each month thereafter until paid; the first 12 installments shall be in the amount of $423.47 and the final installment shall be in the amount of $...... with interest from date on the unpaid amount being payable at the maturity of each installment, until maturity at the rate of 0% per annum and after maturity at the highest legal contract rate, and if placed in the hands of an attorney for collection, a reasonable sum as attorneys' fees. Upon non-payment of any installment or interest when due, all remaining installments shall, at the option of the holder and without notice or demand, become immediately due and payable together with interest, collection charges and attorneys' fees. The makers, endorsers and all parties to this note hereby waive presentment for payment, demand, protest, notice of protest and notice of dishonor hereof, and further hereby waive all benefit of valuation, appraisement and exemption laws. The holder may extend the time of payment of this note, postpone the enforcement hereof, grant any other indulgence and add or release any party primarily or secondarily liable hereon without affecting or diminishing the holder's right of recourse against the makers, endorsers and all parties to this note, which right is hereby expressly reserved.
 
 
 34
 Signed: Factory Outlet Tire
 Distributors, (Seal)
 (Buyer Sign Here)
 Charles Steen.
Witness: Louise M. King,
Witness: Geraldine Ruf.
 
 
 35
 Assignment.
 
 
 36
 For Value Received, the undersigned hereby endorses, sells, assigns and transfers to James Talcott, Inc., its successors or assigns, the contract of conditional sale on the reverse side hereof, the sums payable thereunder and all right, title and interest in and to the property therein described, and all notes, contracts of guaranty or surety, collateral of any kind or character which the undersigned has pertaining to the said contract, together with all rights, remedies and powers pertaining thereto, with good right to collect and discharge the same.
 
 
 37
 The undersigned represents and warrants that said contract was executed in connection with the conditional sale of the property described therein, that the undersigned has good title to said contract and to said property and good right to sell and transfer the same; that said property is free from all liens, judgments and encumbrances; that no agreement, oral or written, or bill of sale or other paper (except the within contract) was made or given by the Seller in connection with the conditional sale of said property to the Buyer; that said property has been delivered to and accepted by the Buyer; that said contract is valid and subsisting, that the parties thereto have capacity to contract and that there is still unpaid and owing thereon, after allowing all setoffs, deductions and counterclaims, the whole of the balance due stipulated in and evidenced by said contract, the payment of which is hereby guaranteed by the undersigned, together with interest, presentation, attorney's fees, court costs or other expenses in connection therewith. Genuineness of all signatures and identity of parties are also guaranteed. Demand, presentation, protest and notice of default or non-payment are hereby waived.
 
 
 38
 Dated at Dallas, Texas this 2nd day of October, 1956.
 The Grimes Co., (Seal)
 (Seller)
 Witness ................ By Ernest Major.
 ......................
 (If corporation, an authorized officer
 should sign, stating his title and attach
 corporation seal. If partnership,
 first sign firm name and have
 one or more partners sign.)

 Conditional Sale Contract.

 Endorsement.

 Pay to the Order of
 James Talcott, Inc.,

 225 Fourth Avenue, New York, N. Y.
 
 
 39
 The undersigned do each (jointly and severally) unconditionally guaranty the prompt payment of the within note at maturity or any time thereafter, or on default prior thereto, hereby waiving presentment for payment, demand, protest, notice of protest, notice of dishonor and notice of every kind or nature, and accepting all its provisions and authorizing the holder, without notice to us or either of us, to grant one or more extensions in whole or in part, and/or to receive security or additional security for the payment hereof and/or to surrender, release or substitute any such security.
 
 
 40
 If any installment of this note, or the interest, is not paid when due, then the amount remaining unpaid hereon shall, without notice or demand become immediately due and payable, at the option of the holder, and may be recovered in any suit brought by the holder of this note against any one or more or all of us, at the option of said holder, whether such suit has been commenced against the maker or not, and that in any such suit the maker may be joined with one or more or all of us, at the option of the holder.
 
 
 41
 The Grimes Co.,
 (Seller Sign Here)
 By Ernest Major.
 
 
 
 Notes:
 
 
 [1]
 Article 5489, 5654, 3327 Vendor's security
 "All reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages * * *." Article 5489 of Chap. 6, Chattel Mortgages, Vernon's Civil Statutes of the State of Texas, Ann., Vol. 16.
 Article 5490 Chattel Mortgages, Title 90,
 "Every chattel mortgage, deed of trust, or other instrument of writing, intended to operate as a mortgage, or lien upon personal property, and every transfer thereof which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged, pledged, or affected by such instrument, shall be absolutely void as against the creditors of the mortgagor or person making same, as against subsequent purchasers and mortgagees or lien holders in good faith, unless such instrument, or a true copy thereof, shall be forthwith deposited with and filed in the office of the County Clerk of the county where the property shall then be situated, or if the mortgagor or person making the same be a resident of this State, then, of the county of which he shall at that time be a resident; * * *" Vernon's Civil Statutes of the State of Texas, Ann., Vol. 16.
 
 
 
 42
 On Motion for Rehearing.
 
 
 43
 Rehearing denied.
 
 
 44
 SCIINACKENBERG, Circuit Judge (concurring in the denial of appellant's petition for rehearing).
 
 
 45
 As to appellant's petition for rehearing, the most that can be said in its favor is that Judge FINNEGAN'S opinion, in its approval of the referee's holdings as to what the Texas law is, is very brief. However, the opinion does, in effect, interpret the Texas recording statutes. It is significant that appellant, in its petition for rehearing, does not challenge the correctness of that interpretation as a matter of law.
 
 
 46
 For these reasons, I have voted to deny appellant's petition for rehearing.